James D. DiPasquale (011033)
**DIPASQUALE & SUMMERS, LLP**
1003 Bishop Street, Suite 1260
Honolulu, Hawaii 96813
Phone: (808) 240-4771
Facsimile: (808) 240-4765
james@ds-lawoffices.com

Kevin J. Stoops (PHV Forthcoming)
Charles R. Ash, IV (PHV Forthcoming)
**SOMMERS SCHWARTZ, P.C**.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
kstoops@sommerspc.com
crash@sommerspc.com

*Attorneys for Plaintiff and the putative FLSA Collective members*

## UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| **RICHARD DAMRON**, on behalf of herself and others similarly situated, <br> Plaintiff, <br><br> v. <br><br> **CURT FAUS CORPORATION**, <br><br> Defendant. | Case No.: <br><br> **COLLECTIVE/CLASS ACTION COMPLAINT** <br><br> **JURY DEMAND** |

## COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff RICHARD DAMRON ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, hereby files this Collective and Class Action Complaint against Defendant CURT FAUS CORPORATION ("Defendant"), and states as follows:

1

## **INTRODUCTION**

1.      This is a collective action, brought pursuant to 29 U.S.C. § 216(b), and a class action, brought pursuant to Fed. R. Civ. P. 23, by Plaintiff, individually, and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and the Hawaii Wage and Hour Law, Haw. Rev. Stat. §§ 388-1, *et seq*. ("HWHL").

2.      Defendant's business consists of general contracting and construction management.[1]

3.      Defendant employed Plaintiff and other "Hourly Laborers" (including Field Carpenters, Electricians, and General Laborers) to do carpentry, demolition, electrical, concrete and other basic construction work for Defendant's customers.

4.      Defendant misclassified its Hourly Laborers as independent contractors and failed to pay them overtime premiums, as required by the FLSA.  *See*, 29 U.S.C. § 207.

5.      Defendant also unlawfully withheld wages for lodging, board, and other facilities that were customarily furnished by Defendant to employees, in violation of the HWHL. *See*, §§ 388-1, 388-6.

6.      Furthermore, Defendant failed to timely pay wages, as required by the HWHL.  *See*, HRS § 388-2.

7.      Plaintiff seeks a declaration that his rights and the rights of the putative collective and class action members were violated, an award of unpaid wages and liquidated damages, injunctive and declaratory relief, interest, attendant penalties, and an award of attorneys' fees and costs to make them whole for damages they suffered, and to ensure that they and future workers will not be subjected by

---

[1] https://www.cfauscorp.com/ (last visited December 16, 2020).

Defendant to such illegal conduct in the future.

## **JURISDICTION**

8.     This Court has subject matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201 *et seq.*

9.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

10.     Defendant's annual sales exceed $500,000, and Defendant has more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendant's employees engage in interstate commerce or in the production of goods for commerce; therefore, they are also covered by the FLSA on an individual basis.

11.     The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

12.     The Court has personal jurisdiction over Defendant because Defendant conducts business in Hawaii, employs individuals—including Plaintiff—in Hawaii, is registered with the Hawaii Business Registration Division, Department of Commerce & Consumer Affairs (File # 74215F1), has caused injuries in Hawaii, and generally engages in substantial activities in Hawaii.

13.     This Court also has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1367.

14.     This Court has jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because the state law claim and the federal claim are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

15.    This Court also has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  This is a class action in which: (1) there are 100 or more members in the proposed classes; (2) at least some members of the proposed classes have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

16.    Personal jurisdiction also applies to Defendant because Defendant has purposefully availed itself of the privilege of conducting activities in Hawaii and has established minimum contacts sufficient to confer jurisdiction over it; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

## VENUE

17.    Venue is proper in the District of Hawaii under 28 U.S.C. § 1391(b) because Defendant employed Plaintiff and other Hourly Laborers in Hawaii. Therefore, a substantial part of the events forming the basis of this suit (including implementation of the illegal pay practices alleged in this litigation) occurred in the District of Hawaii.

## PARTIES

18.    Plaintiff RICHARD DAMRON was employed by Defendant as an Hourly Laborer in Hawaii from May 2017 to December 2019. In that position, Plaintiff typically worked approximately 65 hours per week.  However, on many occasions, Plaintiff worked well in excess of 65 hours in a single week. Plaintiff was compensated on an hourly basis, most recently, at a rate of $50 per hour. Plaintiff signed a consent form to join this collective action lawsuit, attached hereto as **Exhibit A**.

4

19.    Defendant CURT FAUS CORPORATION is an Oregon Corporation registered to do business in Hawaii (File Number: 74215F1).  Defendant's Principal Office address is located at 5755 Willow Lane, Suite F, Lake Oswego, Oregon 97035. Defendant's registered agent for service of process in Hawaii is Incorp Services Inc., 1136 Union Mall, Suite 301, Honolulu, Hawaii 96813-2711.

20.    According to its website, Defendant is "[y]our full-service general contracting partner.  We specialize in retail environments, and apply our decades of experience toward completing a broad range of projects."  *See*, https://www.cfauscorp.com/ (last visited December 28, 2020).

21.    Upon information and belief, Defendant has employed hundreds of Hourly Laborers—including Plaintiff—during the last three years to perform various tasks on their construction projects.

22.    Defendant's website also represents that they are licensed in Alaska, Oregon, Washington, North Dakota, Nevada, New Mexico, Idaho, Utah, and Hawaii.  *See*, https://www.cfauscorp.com/ (last visited December 28, 2020).

## GENERAL ALLEGATIONS

### A.    Defendant Misclassified Its Hourly Laborers

23.    Plaintiff worked as an Hourly Laborer for Defendant within the last three years.

24.    During his employment with Defendant, Plaintiff assisted in performing a number of general labor tasks for Defendant, including: installing cabinets, concrete work, framing, hanging dry wall, and window installation.  Other Hourly Laborers had the same or similar job duties as Plaintiffs.

25.    Plaintiff has a high school education, but no college degree.  He also holds no professional licenses.  Defendant's other Hourly Laborers have similar educational backgrounds as Plaintiffs.

26.     The job qualifications for to be an Hourly Laborer for Defendant were low, but Defendant did offer training to Hourly Laborers.

27.     Under the "Employment Opportunities" section of Defendant's website, it invites potential Hourly Laborers to "[b]e a part of our amazing team at Curt Faus Corporation. We are currently looking for Field Superintendents and Field Carpenters. Get in touch with us to learn more."  The website goes on to provide instructions of where individuals should send their resumes.  *See*, https://www.cfauscorp.com/employment-opportunities (last visited 12/28/20).

28.     The Hourly Laborer positions of "Field Superintendent" and "Field Carpenter" are both hourly positions.  Plaintiff held both of these job titles during his employment with Defendant.

29.      Defendant required Plaintiff and all other Hourly Laborers to work a set schedule, which was often 7:00 AM to 5:00 PM, but they often worked passed those hours at the direction of Defendant.

30.     Defendant sent Hourly Laborers to work on jobs across the country.

31.     Defendant promised to pay Hourly Laborers for lodging, board and facilities, but often failed to fully reimburse them as promised.  This resulted in a shortage of the payment of wages.

32.     Defendant also promised a daily stipend to all Hourly Laborers, but often failed to provide it.

33.     For example, on several occasions Plaintiff was forced to sleep in an airport because Defendant did not provide him with money for lodging. Additionally, Defendants regularly failed to pay Plaintiff's board while he was traveling.

34.     Defendant provided Plaintiff and all other Hourly Laborers with a Curt Faus Corporation work shirt, but also permitted them to wear a florescent colored t-shirt.

6

35.     Defendant provided Hourly Laborers with detailed supervision, instruction, and training on how to perform their day to day job duties.

36.     Hourly Laborers were not permitted to deviate from Defendant's instruction on how to perform their job activities without being subject to discipline, up to and including termination.

37.     As evidenced by the number of hours the Hourly Laborers worked for Defendant (and the fact that they were routinely required to travel), they worked exclusively for Defendant and were under Defendant's control while working.

38.     Hourly Laborers were subject to the control of Defendant from the moment their workday began to the moment it ended.  For example, Defendant required Hourly Laborers to stay in the same hotel, then provided transportation to and from the job site via vans.

39.     At all relevant times, Defendant was responsible for the hiring, management, and discipline of Hourly Laborers – as evidenced by the job postings on Defendant's website.

40.     Defendant provided all the major tools for Hourly Laborers to perform their job duties.

41.     Despite the above facts, Defendant misclassified Hourly Laborers as independent contracts, rather than employees.  Plaintiff and all other Hourly Laborers should have been classified as employees, rather than independent contractors.

42.     Not only did Defendant fail to pay Hourly Laborers employment benefits, but Defendant also failed to pay them overtime premiums, as required by the FLSA and HWHL.

**B.     <u>Defendant Fails to Provide Overtime Wages</u>**

43.     As non-exempt employees, Defendant's Hourly Laborers were entitled to full compensation for all overtime hours worked. Under the FLSA, employees are

entitled to "not less than one and one-half times the regular rate" at which they are employed for work in excess of 40 hours in a workweek. 29 U.S.C. § 207(a)(1).

44.    Defendant suffered or permitted Plaintiff and Hourly Laborers to work over 40 hours in one or more individual workweeks during the last three years. Nevertheless, Defendant paid Plaintiff and Hourly Laborers straight time wages, regardless of the number of hours they worked each week during their employment.

45.    When Plaintiff and Hourly Laborers worked over 40 hours in one or more individual workweeks, Defendant did not pay them overtime at one-and-one-half times the "regular rate" at which they were employed.

### C.    Defendant Benefited from the Uncompensated Overtime Work and Suffered and Permitted it to Happen

46.    At all relevant times, Defendant directed and directly benefited from the labor performed by Plaintiff and the Hourly Laborers.

47.    At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of Plaintiff and the Hourly Laborers.

48.    At all relevant times, Defendant was able to track the amount of time Plaintiff and the Utilization Review Employees spent working in excess of forty hours in a single week. In fact, Defendant did track this time, however, Defendant refused to pay overtime premiums, as required under state and federal overtime laws.

49.    At all relevant times, Plaintiff and the Hourly Laborers were non-exempt employees, subject to the requirements of the FLSA.

50.    Defendant expressly trained, instructed and permitted Plaintiff and the Hourly Laborers to perform more than 40 hours of labor during numerous individual workweeks.

51.    Because Plaintiff and the Hourly Laborers typically worked more than

40 hours in a workweek, Defendant's policies and practices (misclassification) deprived Plaintiff and the Hourly Laborers of overtime wages for the labor they performed

52.     Defendant knew or should have known that the labor performed by Plaintiff and the Hourly Laborers did not qualify for the FLSA's administrative, executive or professional exemption. Indeed, given the routine, guided and rote nature of the labor, the lack of discretion and independent judgment with respect to matters of significance, and the strict guidelines the Hourly Laborers were required to adhere to, there is no conceivable way for Defendant to establish that its classification scheme was enacted in good faith.

53.     Despite knowing Plaintiff and the Hourly Laborers performed more than 40 hours of labor in numerous individual workweeks, Defendant failed to make any effort to stop or disallow the overtime work and instead suffered and permitted it to happen, then failed to properly compensate it.

54.     Unpaid overtime wages related to the overtime work described herein are owed to Plaintiff and the Hourly Laborers at the mandated overtime premium of one and one-half times the "regular rate" at which they were employed because Plaintiff and the Hourly Laborers regularly worked more than 40 hours in a workweek.

**D.     Defendant Withheld Wages and Failed to Timely Pay Wages**

55.     As stated above, Defendant regularly withheld "wages" from Plaintiff and the other Hourly Laborers, as defined by the HWHL.

56.     Specifically, Defendant regularly withheld the wage payments for board, lodging, or other facilities that were customarily furnished by Defendant.

57.     On other occasions, Defendant failed to timely make payments of wages.  For example, during much of Plaintiff's employment, Defendant failed to pay Plaintiff for all wages owed "at least twice during each calendar month, on

regular paydays designated in advance."  In fact, at times, Defendant only paid Plaintiff once a month. *See* HWHL 388-2.

58.    Additionally, to the extent Defendant did pay wages for board, lodging, or other facilities, they were often paid late.

## FLSA COLLECTIVE ACTION ALLEGATIONS

59.    Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on his own behalf and on behalf of:

> ***All similarly situated current and former Hourly Laborers who work or have worked for Defendant in the last three years and who were classified as independent contractors and not paid overtime premiums***.

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

60.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated Hourly Laborers.

61.    Excluded from the FLSA Collective are Defendant's executive, administrative and professional employees, including computer professionals and outside salespersons.

62.    Consistent with Defendant's policy and pattern or misclassification practice, Plaintiff and the FLSA Collective were not paid premium overtime compensation when they worked beyond 40 hours in a workweek.

63.    Defendant assigned and/or was aware of all the work that Plaintiff and the FLSA Collective performed.

64.    As part of its regular business practices, Defendant intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the

10

FLSA with respect to Plaintiff and the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

      a.    Willfully misclassifying Plaintiff and the FLSA Collective as independent contractors under the FLSA; and

      b.    Willfully failing to pay Plaintiff and the FLSA Collective premium overtime wages for hours worked in excess of 40 hours per workweek.

65.    Defendant is aware or should have been aware that Plaintiff and the FLSA Collective were non-exempt employees (not independent contractors) and that federal law required it to pay Plaintiff and the FLSA Collective overtime premiums for hours worked in excess of 40 per workweek.

66.    Defendant's unlawful conduct has been widespread, repeated and consistent.

67.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy or plan; and (d) their claims are based upon the same factual and legal theories.

68.    The employment relationships between Defendant and every proposed FLSA Collective member are the same. The key issue – whether the labor performed by Hourly Laborers qualifies for the professional, executive or administrative exemption – is the same among the proposed FLSA Collective members. Alternatively, the issue of whether the Hourly Laborers are employees or independent contractors is the same among the proposed FLSA Collective members.

69.     Many similarly situated current and former Hourly Laborers have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

70.     Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

71.     Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's personnel and payroll records.

72.     Plaintiff estimates the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds of workers. The precise number of FLSA Collective members should be readily ascertainable from a review of Defendant's personnel and payroll records.

## RULE 23 HAWAII CLASS ACTION ALLEGATIONS

73.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on his own behalf and on behalf of:

> ***All similarly situated current and former Hourly Laborers who work or have worked for Defendant in the last three years in Hawaii and who were classified as independent contractors and not paid overtime premiums***.

(hereinafter referred to as the "Rule 23 Hawaii Class"). Plaintiff reserves the right to amend this definition if necessary.

74.     The members of the Rule 23 Hawaii Class are so numerous that joinder of all Rule 23 Hawaii Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Hawaii Class members. Rule 23

12

Hawaii Class members should be easy to identify from Cintas' computer systems and electronic payroll and personnel records.

75.    <u>Commonality</u>.   There is a well-defined community of interest among Rule 23 Hawaii members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Hawaii Class. These common legal and factual questions, include, but are not limited to, the following:

a.    Whether the Rule 23 Hawaii Class members were misclassified as independent contractors;

b.    Whether Defendant failed to provide wage statements to the Rule 23 Hawaii Class, as required by HRS § 388-7(4);

c.    Whether Defendant failed to timely pay the Rule 23 Hawaii Class's wages; and

d.    Whether Defendant unlawfully withheld wages from the Rule 23 Hawaii Class, in violation of HRS 388-6.

76.    <u>Numerosity</u>.   Plaintiff estimates the size of the Rule 23 Hawaii Class to be in excess of 100 individuals.   This size makes bringing the claims of each individual member of the class before this Court impracticable.   Likewise, joining each individual member of the Rule 23 Hawaii Class as a plaintiff in this action is impracticable.   The identity of the members of the Rule 23 Hawaii Class will be determined from Defendant's records, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Rule 23 Hawaii Class and Cintas.

77.    <u>Typicality</u>.   Plaintiff's claims are typical of those of the Rule 23 Hawaii Class in that they and all other Rule 23 Hawaii Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.   Plaintiff's claims arise from the same pay policies, practices,

promises and course of conduct as all other Rule 23 Hawaii Class members' claims and his legal theories are based on the same legal theories as all other Rule 23 Hawaii Class members.

78.   <u>Adequacy</u>. Plaintiff will fully and adequately protect the interests of the Rule 23 Hawaii Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions, including Hawaii state law wage and hour claims. Neither Plaintiff nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Hawaii Class.

79.   <u>Superiority</u>.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Hawaii Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.  Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

80.   <u>Manageability</u>.  This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Cintas has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.  By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Rule 23 Hawaii Class members will be promoted.  Additionally, class treatment in this matter will provide for judicial consistency.

81.   Notice of the pendency and any resolution of this action can be provided to the Rule 23 Hawaii Class by mail, electronic mail, text message, print, broadcast, internet and/or multimedia publication.  The identity of members of the Rule 23 Hawaii Class is readily identifiable from Cintas' records.

82.     This type of case is well-suited for class action treatment because: (1) Cintas' practices, policies, and/or procedures were uniform; (2) the burden is on Cintas to prove that it properly compensated Plaintiff and the Class Members; and (3) the burden is on Cintas to accurately record hours worked by employees.

83.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

84.     Because Cintas acted and refused to act on grounds that apply generally to the Rule 23 Hawaii Class and declaratory relief is appropriate in this case with respect to the Rule 23 Hawaii Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate

85.     Ultimately, a class action is a superior form to resolve the Hawaii state law claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Defendant's to pay Plaintiff and the Rule 23 Hawaii Class as agreed.

## COUNT I
## 29 U.S.C. § 216(b) COLLECTIVE ACTION
## VIOLATION OF FLSA, 29 U.S.C. § 201 *et seq*.
## FAILURE TO PAY OVERTIME WAGES

86.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

87.     At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

88.     At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

89.     Plaintiff and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

90.     Plaintiff and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

91.     At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

92.     Defendant violated the FLSA by misclassifying Plaintiff and the FLSA Collective as independent contractors, exempt from overtime pay, and by failing to pay overtime to Plaintiff and the FLSA Collective when they worked over 40 hours in individual workweeks.

93.     Contrary to Defendant's uniform misclassification scheme, Plaintiff and the FLSA Collective were not independent contractors, they were non-exempt employees.

94.     Plaintiff and the FLSA Collective were directed by Defendant to work, and did work, over 40 hours in one or more individual workweeks.

95.    Defendant paid Plaintiff and other FLSA Collective members a salary and no overtime compensation.

96.    In workweeks where Plaintiff and other FLSA Collective members worked 40 hours or more, they should have been paid for such overtime work at the federally mandated rate of one and one-half times the "regular rate" at which they were employed, including bonuses, commissions, shift differentials and nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

97.    Defendant's FLSA violations were knowing and willful. Defendant knew or could have easily determined that Plaintiff and the FLSA Collective were misclassified as exempt from overtime pay, and Defendant could have easily accounted for and properly compensated Plaintiff and the FLSA Collective for their overtime work, but deliberately chose not to.

98.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

### COUNT II
### RULE 23 HAWAII CLASS ACTION
### VIOLATION OF HAWAII WAGE AND HOUR LAW, HRS § 388-1, *et seq*.
### WITHOLDING OF WAGES

99.    Plaintiff incorporates by reference each and every paragraph as though

17

fully stated herein.

100.   HRS § 388-6 states "[n]o employer may deduct, retain, or otherwise require to be paid, any part or portion of any compensation earned by an employee except where required by federal or state statute … or in writing by the employee."

101.   HRS § 388-1 provides that "'[w]ages' means compensation for labor or services rendered by an employee, … [i]t shall include the reasonable costs … to the employer of furnishing an employee with board, lodging, or other facilities if such board, lodging, or other facilities are customarily furnished by the employer the employer's employees."

102.   HRS § 388-2(a) provides that "[e]very employer shall pay all wages due to the employer's employees at least twice during each calendar month."

103.   HRS § 388-2(b) states "[t]he earned wages of all employees shall be due and payable within seven days after the end of each pay period."

104.   As stated above, Defendant promised to pay, but regularly failed to pay Plaintiff and the Rule 23 Hawaii Class for reasonable expenses incurred for travel, lodging, board, daily stipends, and other expenses.

105.   As a result of Defendant's failure to pay Plaintiff and the Rule 23 Hawaii Class for reasonable expenses incurred for travel, lodging, board, daily stipends, and other expenses, Defendant failed to pay Plaintiff and the Rule 23 Hawaii Class all wages.

106.   Additionally, Defendant has failed to timely pay wages to Plaintiff and the Rule 23 Hawaii Class, as required by HRS § 388-2.

107.   Defendant also failed to furnish Plaintiff and the Rule 23 Hawaii Class pay statements, as required by HRS § 388-7(4).

108.   Pursuant to HRS § 388-10, "[a]ny employer who fails to pay wages in accordance with this chapter … shall be liable … [t]o the employee, in addition to the wages legally proven to be due, for a sum equal to the amount of unpaid wages and interest at a rate of six percent per year from the date that the wages were due.

109.   In addition to the outstanding wages, Defendant owes Plaintiff interest on the outstanding wages, pursuant to HRS § 388-10.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on his own behalf and on behalf of the putative FLSA Collective and Rule 23 Hawaii Class, requests judgment as follows:

a.   Certifying this action as a collective action in accordance with 29 U.S.C. § 216(b);

b.   Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, dates of employment, and phone numbers of all FLSA Collective members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, so as to apprise the FLSA Collective members of their rights by law to join and participate in this lawsuit;

c.   Designating Plaintiff as the representative of the FLSA Collective and undersigned counsel as class counsel for the same;

d.  Declaring Defendant violated the FLSA and the Department of Labor's (DOL) attendant regulations as cited herein;

e.  Declaring Defendant's violations of the FLSA were willful;

f.  Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the FLSA Collective the full amount of damages and liquidated damages available by law;

g.  Certifying this as a Rule 23 class action on behalf of the Rule 23 Hawaii Class;

h.  Designating Plaintiff as the representative of the Rule 23 Hawaii Class and undersigned counsel as class counsel for the same;

i.  Declaring Defendant violated Hawaii State Wage Laws, as outlined herein;

j.  Declaring Defendant's violations of the Hawaii State Wage Laws were willful;

k.  Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the Rule 23 Hawaii Class the full amount of damages and interest available by law;

l.  Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

m.  Awarding pre- and post-judgment interest to Plaintiff on these damages; and

n.  Awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiff, individually and on behalf of all others similarly situated, by and through his attorneys, hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38 and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: January 5, 2021                    Respectfully Submitted,

                                          s/ *James D. DiPasquale*
                                          James D. DiPasquale (011033)
                                          **DIPASQUALE & SUMMERS, LLP**
                                          1003 Bishop Street, Suite 1260
                                          Honolulu, Hawaii 96813
                                          Phone: (808) 240-4771
                                          james@ds-lawoffices.com

                                          Kevin J. Stoops (PHV Forthcoming)
                                          Charles R. Ash, IV (PHV Forthcoming)
                                          **SOMMERS SCHWARTZ, P.C.**
                                          One Towne Square, 17th Floor
                                          Southfield, Michigan 48076
                                          Phone: (248) 355-0300
                                          kstoops@sommerspc.com
                                          crash@sommerspc.com


                                          *Attorneys for Plaintiff and the putative FLSA*
                                          *Collective members*